The court is delighted to welcome one of its colleagues from California today, Judge Ronald White, who I think we both agreed doubled the IQ of this panel by his arrival, didn't he? We're delighted to welcome him. And our first case is Matthews v. the Postal Service. Good morning. May it please the court that in this case I believe that I would like to place this case in context. We believe that if we look at the evidentiary record, and specifically the evidence in the record at this time, we will see a picture or a mosaic that did not warrant the results. Specifically, I turn this court's attention to the specific settlement agreement that was dated 9-2302. This is the beginning of the train leaving the station. And this is found in R.A. 24 and 25. I note for the court, if you look at that document in its entirety, there is absolutely nothing in this document relating to the zero tolerance policy. There is nothing in the document alluding to a prior violation of that policy. Then, as this train leaves the station, further, the letter of decision was issued. And in that letter of decision, R.A. 16, 17-19, and I think it is very important and noteworthy on R.A. 16, the zero tolerance issue surfaces for the first time. And in this document, it highlights that Mr. Matthews was confronted and he used the phrase, I owe you one. He is then asked, what does that mean? If you look at R.A. 16, what does that mean? Well, it does not talk about the person hearing the phrase. And I ask this court to look at this in its totality and context as it looks at another issue we will talk on subsequently. There is nothing in this record of Mr. Montgomery or anyone saying I was offended, I felt threatened on R.A. 16. But that charge was withdrawn. Well, it was withdrawn, but ultimately, the ALJ indicated that he found by a preponderance of the evidence that both charges were sustained in its decision and order. So it was still there. It was initially withdrawn, however, at the hearing. But in the decision itself, it found by a preponderance of the evidence that it was sustained. Where does it say that? And if we look at the decision on pages R.A. 7, thus I find that the proposal contains both the charge of an unacceptable agent and a charge that the violation of zero policy violated the settlement agreement on page 4. He talks about it, and this is kind of, I think, the… Well, where does he say that the zero tolerance charge is sustained? He doesn't say that. He doesn't say that directly. And neither does he say anything in here that, Your Honor, that he says that it was withdrawn or it's not in the record. I read it to mean that both charges were sustained. At any rate, assume an arguendo, and I think that Judge Dyke… Is it Dyke? I'm sorry. I can't pronounce it correctly. This highlights a point. Let's assume that it was withdrawn. What are we then left with in this case? We are left with Mr. Matthews being on the clock, telling his supervisors that he was not on the clock. In other words, he lied or he fabricated and made a misrepresentation. The problem for the appellant in this case, and we can't withdraw that now. They indeed made the stipulation that, which was in the hearing record, and it's outlined on page 8 of my brief. It was intended to mislead or deceive the agency and to impede the investigation as to whether Mr. Matthews had committed misconduct. That's in the record. That is all this case is about. In determining an appropriate action to be taken, though, can't the entire record be considered of how he's performed over the years as an employee? And we believe that that entire record should have been considered over the years. And we believe also when you look at the evidentiary record in here, in terms of the basis of the removal, and look at the existing case law out here and the day in court, does this record on its face mandate a draconian jump from a 7-day suspension to a termination at disjunction? And when one looks at the testimony, he is not a supervisory employee. He is not a trusted employee. It just does not compute. He is not stealing from the Postal Service. The understanding of coming in here saying, yes, I lied. I tried to cover, tried to save my job. Yes, I'm on Selexis. I was taking my medication. There is no other evidence in this record that he has done this before. Did the ALJ simply misapply the Douglas factor? Does this case amount to the 12 criteria as identified in the Douglas factor? But don't we have to find almost an abuse of discretion before we can reconsider those Douglas factors? Well, I don't think you have to find an abuse of discretion were in this record other than the ALJ saying by a preponderance of the evidence. There is no analysis done in the ALJ's decision from an evidentiary point as to why this has happened. And I think in the employment context, many decisions are made on subjective criteria versus objective criteria. This record is completely devoid of objective criteria as it related to Mr. Mack. Is there something arbitrary and capricious about what the ALJ has done? It's not arbitrary and capricious, but it's my understanding in looking at the case law that there ought to still be a record. You just cannot summarily conclude that based upon, it seems to me that there ought to be an analysis of each of the 12 criteria, that some evidence ought to be there. And I think on this record, that does not exist. It just does not exist. And for these reasons, we believe that it is appropriate that this tribunal reverse and remand in this matter. Thank you. Thank you, Mr. Nunnery. Mr. Bell? Good morning, Your Honors. May it please the Court. To clarify one point, the AJ on RA-7 said the agency withdrew the charge relating to the zero tolerance taxes. That is out of the case. And the case proceeded just on the unreasonable conduct based on the line. It seems to me that they have a point here. And let me tell you what I think that is. That under La Chance, it seems to me that with the record that was made before the agency here, that the withdrawal of the more serious charge, that is the violation of the zero tolerance policy, ordinarily would require a remand to the agency to determine if the agency wanted to impose the same penalty. And the way you get around that here is, as I understand it, the deciding official testified at the hearing that he would have imposed the same penalty even if he had only been considering the charge of lying and not the charge of zero tolerance. So the question I have is, is that an appropriate way for the agency to indicate what it would do? Normally under Chenery, you know, there's an agency procedure. There's a deciding official who reaches a decision. There's review within the agency. Is the testimony of the deciding official as to what he would have done a fair substitute for the agency making the decision in the normal course of things? Do you understand what I'm saying? I believe I understand the question. The answer is yes, it is a fair substitute. A couple of points about that. One, that LeChan's case itself makes clear that it certainly suggests that the testimony can be taken into consideration. For example, it points out that where not all the charges are sustained, the first question, the first charge for the board, for the agent, is to consider what the agency would have done had it been confronted with just the charge that was sustained. And in that opinion, this court has said that where the record is silent, it can presume that it would have imposed the same charge. But it also indicated where there is testimony in the record, it can consider that. So that alone suggests that the board may take into account testimony that's brought out at the hearing. The other point about LeChan's is that it makes clear that where the letter of decision is no longer a valid articulation, can no longer itself be the justification for a penalty that's imposed, that the deciding official, in essence, as a matter of efficiency, can do two things. By the way, did Matthews challenge this procedure at all? I'm sorry, Your Honor, I should have said that first. There was no objection at any point. In fact, the parties completely agreed that this was an appropriate way to proceed. The deciding official said before the hearing began that this was how he intended to proceed, and both parties agreed that that was fine. So I'm sorry, I should have pointed that out first. But basically, the deciding official, or I'm sorry, the A.J.'s, under LeChan's, the A.J.'s responsibility is twofold when it has a situation where the penalty is imposed or the letter of decision is based on charges that are, in part, on charges that aren't sustained. That it steps in the shoes, essentially, as a matter of efficiency. It doesn't have to remand to the agency. It can step in the shoes of the deciding official, first, to determine what the deciding official would have done, and second, to determine whether the record would support that decision based on a reasonable balance of the factors. That's exactly what the A.J. did here. The only difference here, the only thing that's different here with LeChan's itself, was the procedural posture of the case in that the charges were withdrawn before the hearing rather than not being sustained after the hearing. And the A.J. took advantage of that procedural posture by taking the testimony of the deciding official. Again, the parties didn't object to that. Mr. Nunnery observes that he doesn't see a lot of analysis of the Douglas factors, yet wasn't that the objective of taking testimony from Mr. Forbus, and wasn't there some examination of the Douglas factors in the record? There was an extended examination of the factors in the record. In fact, that was the entirety of Mr. Forbus' testimony. Now, the actual opinion by the administrative judge, it did lay out the factors that were relevant, but it ultimately said that the judge agreed with the analysis set forth in the hearing. It didn't fully recount every last detail of the testimony, but, yeah, that's what the hearing was about. There was no dispute that the charge was properly sustained. The parties stipulated to that. So the entire hearing was about whether the penalty of removal was reasonable based on that stipulated charge. Would you agree that absent the testimony from Forbus at the hearing, the case would have had to be sent back to the agency for a redetermination of the penalty based on the fact that the agency considered the zero-tolerance charge to be far more serious? Probably. But, on the other hand, the parties agreed to proceed this way. The other option would have been to remand to the agency for reconsideration, but the La Chance case is primarily motivated by forestalling those kind of unnecessary steps, that this step could be taken right here, right now at the hearing. Does that happen with some frequency? I think the more typical case is the situation that came up in La Chance, where after the hearing the board sustains or doesn't sustain a charge. I think it is rather uncommon to have a situation where, before the hearing, basically one charge is not sustained and the other charge is stipulated to it. And, again, where the parties agreed that this is an appropriate way to proceed, and where, in fact, there is an extended discussion over the proper balance of the doubtless factors at the hearing, then I see no real basis for overturning the outcome based on a procedure the parties agreed to undergo. I think, also to answer your question, the whole point is to determine where the letter of decision itself is no longer a reliable indicator, or doesn't provide the justification for a penalty decision, that the board's decision is to look at the record as a whole. Here, absent that testimony by the deciding official, as you suggested, maybe the record as a whole doesn't obtain that kind of justification. On the other hand, it should be added that the parties also agree that removal is typically the appropriate penalty for an offense of a deliberate misstatement intended to mislead the agency. So maybe based on that. But here the record was made under a procedure the parties agreed to. I don't have anything else to add that's not in our brief. Unless the court has further questions, we would rely on the brief and ask the court to affirm. Thank you, Mr. Bell. Mr. Nonnery, you have still over six minutes remaining. Thank you. Didn't the ALJ take into account in determining the penalty, Mr. Forbus' testimony about past performance problems with Mr. Matthews, and the fact that Mr. Matthews showed no remorse? That was said, Your Honor. That is in the record. What my concern is, in responding to Mr. Bell, is either the Douglas factors have some significance or they do not. While this court has ruled that it needs not be exhaustive. But one of the important points that happened in the record, and I highlight this on page 35, and this was actually in the hearing. Question. So you never, in review of the things, you never considered less discipline than termination? No. Question. All right. Why not? Because he was already on a last chance agreement. Last chance means that if he gets in any discipline, that is automatic termination and removal. What happened at the hearing, and that's why when you look at the agreement, the settlement agreement that caused the train to leave the station, it has never been couched as a last chance agreement. Now, I don't apologize for this. This is my first time handling a case before this administrative agency. I handle employment discrimination cases. And in this record, there is always a requirement that there be an objective basis or evidentiary testimony in the record. And what has happened... Mr. Forbus is supplying the Douglas analysis by his testimony at the hearing as opposed to... I did not handle the hearing. No, but it is not in the record that there was an objection of it. But even though it was not in there, what we do see in this testimony, we see in this testimony Mr. Forbus saying in the record it didn't matter. So Mr. Matthews' counsel did not object to his supplying the Douglas analysis at the hearing as opposed to there being a remand. But even... Is that correct? That's correct. And even under those circumstances, this court upon its review, this is a de novo review, it is still what is in the record, even though that may have been missed. The adequacy and effective of alternative sanctions to deter such conduct in the future by the employee are others. That is the Douglas factor number 12, which was clearly missed. And what I also want to do, and I'm remiss in this because I'm accustomed to seeing the docket, the record from the federal district courts going to the court of appeals, what I would ask and move on the record at this time is that I be granted leave to at least submit the entirety of the transcript hearing on June 2nd and that I can get a certified copy so that would be in the record. I think that that's important. I don't think that this entire transcript is indirect. I see no reason to object to that. Do you have an objection? We'll be happy to accept that as part of the record. Thank you, Your Honor. Meanwhile, on a matter of public policy grounds, an employee having worked 20-some years, this is the removal or taking of his property interest and his job. There ought to be a substantial basis other than generic ill will and ill feelings. And what is happening in this case, this is the straw that broke the camel's back. You come in here and you lie about the clock. Totally impermissible. In the cases and analysis that I cite in my brief, there is a variation, but there was no case on point for an act of conduct of this nature, jumping soldier coin to a termination. There is no case on point. And we believe that at a minimum, the ALJ should have been required to substantially aid his decision based upon the record as a whole and what was said. Thank you. Thank you, Mr. Nunnery.